180 Ga. App. 849 (1986)
350 S.E.2d 833
IN RE S. E. H.
72571.
Court of Appeals of Georgia.
Decided November 17, 1986.
Howard G. Sokol, Mary R. Carden, for appellant.
Michael J. Bowers, Attorney General, David C. Will, Assistant Attorney General, Rebecca P. Dally, for appellee.
BENHAM, Judge.
This appeal follows an order of the Juvenile Court of Newton County finding S. E. H. to be a deprived child and awarding temporary custody of the child to her maternal grandmother. The child's father applied for discretionary review of the trial court's decision, and we granted his application.
S. E. H.'s father was awarded custody of her by virtue of a divorce decree entered in March 1983. According to the grandmother's testimony, appellant surrendered physical custody of the child to the maternal grandmother in March 1984 due to problems with his new wife. S. E. H. returned to her father's home approximately one week later, but her father brought her back to her grandparents' home because of illness at his home and his desire that S. E. H. avoid contracting the illness. When the next school year commenced, the grandparents enrolled S. E. H. in the school in their district. Her father returned for S. E. H. and removed her from the grandparents' school, intending, according to the grandmother, to enroll her in herformer *850 school. However, he soon again asked the grandparents to care for S. E. H. because he was to be hospitalized. The grandparents, with S. E. H. in tow, then moved from Macon to Newton County without informing S. E. H.'s father. By means of a habeas corpus petition, the father sought the return of his child. Three weeks later, the Newton County Department of Family and Children Services (DFCS) filed a petition in juvenile court, alleging that S. E. H. was a deprived child as defined in OCGA § 15-11-2 (8) (A) and requesting that temporary custody of S. E. H. be awarded to her maternal grandmother. The juvenile court did so, finding that S. E. H. had lived with her maternal grandparents since her father's remarriage; her stepmother did not want her in the home; neither her father nor her stepmother had helped S. E. H. with her personal hygiene or homework; her father disciplined her by cursing her; and her father had allowed his new wife to dictate the way S. E. H. was to be treated and regarded in the home. The court concluded S. E. H. was deprived "as a result of the father's unwillingness to accept responsibility for her and maintain a suitable home environment for her mental, physical, and emotional well-being. . . ."
"When contemplating taking custody of a minor child from [her] parent or parents and awarding it to a third party, the court must initially face the presumption, firmly embedded in our law, that it is in the child's best interest to be with [her] natural parent or parents. [Cits.] In order for this presumption to be overcome, there must be a clear and convincing showing that the child is abandoned, deprived, or abused, or that the parent is unfit to receive or retain custody. [Cits.] Thus, in order to take custody from the natural parent or parents and award it to a third party, the court must consider not simply the `best interest of the child,' which is the appropriate standard when the contest is between the parents [cit.], but the narrower criterion of parental fitness to have the child in his or her custody. [Cits.] Proof of parental unfitness must be clear and convincing. [Cits.] Evidence adduced to achieve this standard of proof must pertain to present rather than past misconduct. [Cits.]" In re M. M. A., 166 Ga. App. 620 (1) (305 SE2d 139) (1983).
"[T]he appropriate standard of appellate review . . . is `whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' This standard of review safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination `on a few isolated instances of unusual conduct or idiosyncratic behavior.' [Cit.] `. . . Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.' [Cit.]" *851 Blackburn v. Blackburn, 249 Ga. 689, 694 (292 SE2d 821) (1982).
With these evidentiary and appellate review standards in mind, we turn to the facts of the case at bar. The trial court found S. E. H. to be "deprived" in that she "[i]s without proper parental care or control, subsistence, education as required by law, or other care and control necessary for [her] physical, mental, or emotional health or morals . . ." OCGA § 15-11-2 (8) (A). "It has been held that to authorize . . . a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. [Cits.]" In re D. H., 178 Ga. App. 119, 124 (342 SE2d 367) (1986).
In the case at bar, the facts found to support the conclusion of deprivation were: (1) the stepmother does not want the child in the home; (2) neither the father nor the stepmother help the child with her personal hygiene or homework; (3) the father disciplines the child by cursing her; (4) the father has allowed his new wife to dictate the way the child is to be treated and regarded in the home; and (5) the father has failed to accept responsibility for the child.
The evidence supporting the first finding consists of the grandmother's recollection of a note written by the stepmother before she married S. E. H.'s father, in which note she expressed concern that she was not responsible enough to be a wife and mother; the grandmother's testimony that the child told her that the stepmother did not care for her; and the child's testimony that the stepmother told her once that she did not want S. E. H. in the home. The grandmother admitted she did not know if the stepmother would care for S. E. H. if she were in that home. Concerning the second finding, the child answered negatively when asked if her stepmother helped her "fix your hair and put your makeup on or whatever you do?" She also stated that her stepmother did not help her with her homework. With regard to the third finding, the child testified that her father cursed her and yelled at her, causing her to become upset and sick to her stomach. However, there was evidence she was on medication for a nervous stomach, a condition she had suffered since the divorce of her parents. The trial court's fourth and fifth findings, in reality, were conclusions the trial court reached based on the above-discussed findings.
"The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." In re Suggs, 249 Ga. 365, 367 (291 SE2d 233) (1982). Our review of the record fails to unearth the clear and convincing proof that any rational *852 trier of fact could have found that S. E. H.'s father had conducted himself in such a way as to abuse or neglect S. E. H. to the extent that his parental right to custody should be terminated. In short, while we cannot condone the uneasy relationships between S. E. H., her father, and her stepmother, we cannot say as a matter of law that the situation is such that the father should be condemned as an unfit parent and stripped of his parental right to custody of S. E. H.
In light of our disposition on the merits of this case, we need not address the remaining enumerated errors.
Judgment reversed. Deen, P. J., and Beasley, J., concur.