611 S.E.2d 150 (2005)
271 Ga. App. 891
In the Interest of K.S., a Child.
No. A04A2134.
Court of Appeals of Georgia.
March 3, 2005.
*151 Teresa Bowen, Blackshear, for Appellant.
Thurbert Baker, Attorney General, Shalen Nelson, Senior Assistant Attorney General, Charles R. Reddick, P.C., Homerville, for Appellee.
BARNES, Judge.
Following an emergency pickup petition by the Ware County Department of Family and Children Services (DFCS), and the subsequent entry of a shelter care order, the Ware County Juvenile Court placed K.S. in the temporary custody of DFCS. DFCS then filed a petition in the juvenile court to have K.S. adjudicated a deprived child, and after conducting a hearing, the court found the child deprived and continued temporary custody in DFCS. The court based the deprivation finding upon the determination that the mother was suffering from a mental impairment, and that the child was at risk for sexual abuse. The mother appeals, contending that there was no present clear and convincing evidence of deprivation. We agree and reverse.
In considering an appeal from the juvenile court's deprivation order, "we review the evidence from the juvenile court hearings in the light most favorable to the court's judgment and determine whether any rational *152 trier of fact could have found by clear and convincing evidence that the children were deprived." (Citation omitted.) In the Interest of J.P., 253 Ga.App. 732, 560 S.E.2d 318 (2002).
Here, the evidence demonstrates that on December 4, 2003, K.S.'s mother went to the hospital emergency room for treatment of a leg wound. She told the doctor that it was caused by a dog scratch which had been sutured, then broke open. But according to DFCS records, doctors believed that it was a stab or puncture wound. For reasons not apparent in the record, a DFCS investigator was called to the hospital to question the mother about the location of her eight-month-old child. The investigator testified that the mother gave conflicting answers about where the child was before eventually telling her that the child was with the mother's parents in Brantley County. The investigator told her to bring the child to the DFCS office by 5:00 p.m. the next day. When the mother said that she did not have transportation to the office, DFCS called K.S.'s paternal grandmother, who agreed to take the mother to pick up the child. At approximately 4:45 p.m. the next day, the paternal grandmother informed DFCS that she did not know where the mother was and that she would not go to the maternal grandparents' home without her. DFCS then asked Brantley County's DFCS to do a "courtesy" interview and evaluation of the grandparents' home "to insure the child was safe and that the child was alive." The Brantley County DFCS investigator testified at trial that she visited the home, but that the department would not recommend the home for placement of the child because of an "extensive history with the agency." She testified that there were past allegations of sexual abuse involving the maternal grandfather and that although the agency closed the investigation in 1998 because of "no evidence or insufficient evidence," the home would not be approved for the placement of K.S.
Thereafter, the maternal grandparents visited the DFCS office where they expressed concern about K.S. being taken from them, and said that the mother "suffers panic attacks" and "needs mental evaluations." They said that the mother has a history of self-mutilation, that they would not allow the mother back into their home, and they wanted custody of K.S. DFCS reportedly was still unable to locate the mother so an emergency pickup order was issued and K.S. was placed in foster care on December 9, 2003. Subsequently, by entry of an emergency shelter care order the juvenile court placed the child in the temporary custody of DFCS, who on December 15, 2003, filed a deprivation petition citing concern for K.S.'s safety at the grandparents' home because of "the previous history of sexual abuse to the mother and her female siblings when they were children."
The department's reunification case plan was implemented on January 5, 2004, and incorporated by court order on January 9, 2004. It noted that K.S. was placed in foster care because of neglect, inadequate housing, and the "caretaker's inability to cope." The plan also stated that the grandparents' home was unsuitable "due to a previous history of sexual abuse to the mother and her female siblings," and that the "[c]hild may be subjected to neglect." An adjudicatory hearing was held on February 10, 2004, and K.S. was found to be deprived. The finding of deprivation was premised on the trial court's determination that the child was at risk for sexual abuse and the mental or physical impairment of the mother.
Under OCGA § 15-11-2(8)(A), a child is deprived if he or she "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." "The definition of a deprived child, as contained in OCGA § 15-11-2(8), `focuses upon the needs of the child regardless of parental fault.... The petition is brought on behalf of the child and it is (the child's) welfare and not who is responsible for the conditions which amount to deprivation that is the issue.' [Cit.]" (Footnote and emphasis omitted.) In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997). To authorize
even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the *153 parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.
(Citations and punctuation omitted.) In the Interest of S.S., 232 Ga.App. 287, 289, 501 S.E.2d 618 (1998). An order temporarily transferring custody of a child based on alleged deprivation must be "grounded upon a finding that the child is at the present time a deprived child," (emphasis supplied) In re J.C.P., 167 Ga.App. 572, 576, 307 S.E.2d 1 (1983), and "[a] finding of parental unfitness is essential to support an adjudication of present deprivation." (Emphasis in original.) Id. at 575, 307 S.E.2d 1.
Reviewing the scant record before us and applying the appropriate standard of review, we do not find clear and convincing evidence sufficient to enable a rational trier of fact to conclude that K.S. is presently deprived. According to the juvenile court's order, the child was deprived because of the mother's mental or physical impairment. There was, however, absolutely no reliable or competent evidence of the mother's present mental impairment. A DFCS social worker testified at the hearing that she had concerns about the mother's mental health because the mother's obstetrician thought that the mother had cuts on her wrist that might have been self-inflicted. She also said that she was concerned about the mother's mental health because the mother had called the social worker after K.S. was taken away and she was crying and depressed and said that she did not know if she could go on without K.S. Although the mother admitted that she had been treated for depression in the past, there was no evidence of a present mental impairment. There was no psychological evaluation included in the record, or reports from treating physicians, or medical reports indicating any mental impairment or how said mental impairment might limit the mother's parental abilities. Other than the mother's admission of her past treatment for depression, the only other evidence in this regard was hearsay and conjecture from laypersons. Moreover, there was no discussion of how this purported condition was relevant to the mother's ability to parent her child. Pursuant to OCGA § 15-11-94(b)(4)(B)(i), evidence of a deficiency in the parent's physical, mental, or emotional health must be "medically verifiable" and "of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." See In the Interest of A.G.I., 246 Ga.App. 85, 87-88(2)(a), 539 S.E.2d 584 (2000). No such showing was made here.
Moreover, the evidence does not substantiate the trial court's finding that the child was at risk for child abuse. Although the deprivation order noted that the mother failed to protect K.S. by leaving her in the care of her maternal grandfather who has a previous history of sexual abuse to the mother and her female siblings, there is no evidence that the mother or her siblings were ever sexually abused by her father. At the hearing, the mother and her sister both testified that they had never been abused by their father. The Brantley County DFCS caseworker also testified that the investigation was closed in 1998 because of "no evidence or insufficient evidence." Although the mother was initially removed from her parents' home after the allegation, it was done at the request of her parents because of the allegations made against her father. The mother testified that the allegations were a lie and that she wanted attention and was mentally "sick" at the time. There is also no evidence that any other child was ever removed from the home because of these allegations against the father. Even if the maternal grandparents' home was deemed unfit, there is no evidence that the mother was told not to allow her child to stay there before the child was taken into custody.
This being so, the record before us is completely devoid of any evidence that the mother lacked proper parenting skills or that the child was not being properly cared for. In fact, none of the competent evidence presented reflected poorly on the mother's parental fitness.
While this court is mindful of the fact that the DFCS caseworkers are charged with the safety and security of the most vulnerable among us, and in this laudable yet unenviable *154 position are required to make at times alacritous decisions, as this court has noted previously, "[t]he right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." (Citation and punctuation omitted.) In re S.E.H., 180 Ga. App. 849, 851, 350 S.E.2d 833 (1986). That standard has not been met in this circumstance.
We reiterate, in order to justify even a temporary transfer of custody, the deprivation must be based upon the unfitness of the parent. Here, there was no competent evidence presented that the mother was unfit to care for her child, and that K.S. was a deprived child at the time of the deprivation hearing. Accordingly, the juvenile court erred in removing the child from the mother's custody and transferring custody to DFCS.
Judgment reversed.
BLACKBURN, P.J., and MIKELL, J., concur.