**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 21, 2012**

# In the Court of Appeals of Georgia

A12A1076. IN THE INTEREST OF D. W., A CHILD

BARNES, Presiding Judge.

The mother of D. W. appeals from the order of the trial court finding her child deprived. She contends that the evidence was insufficient to show that D. W. was deprived while in her care. Upon our review, we reverse the juvenile court's finding of deprivation.

In considering an appeal from the juvenile court's deprivation order, "we review the evidence from the juvenile court hearings in the light most favorable to the court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the children were deprived." *In the Interest of J. P.*, 253 Ga. App. 732 (560 SE2d 318) (2002).

D. W.'s maternal grandmother filed a deprivation complaint in the Juvenile Court of Fulton County alleging that then 10-month-old D. W. was "without proper parental care and supervision" because the mother was "minorly retarded," had ADHD, did not take her medication, and could not care for D. W.[1] The grandmother also alleged that the mother had spanked the child when the child was only five months old, although the Department of Family and Children Services ("DFACS") had apparently investigated and later closed the case. The juvenile court entered an order finding probable cause of deprivation, granted DFACS temporary legal custody, and placed the child with the grandmother. Thereafter, DFACS filed a deprivation petition alleging that D. W. was deprived because of the allegations in the complaint including the mother's untreated "mental health challenges," that she was unable to provide support, an appropriate home, or care for the child.

At the hearing on the deprivation petition, a caseworker testified that he did not know where D. W. was living at the time she was removed from the mother's custody, and that, although DFACS had been informed that the mother was homeless, he found out the day of the trial that the mother had a place to stay. The caseworker

---

[1] The grandmother adopted D. W.'s mother when the mother was in DFACS' custody, so she is the mother's legal mother and natural grandmother.

2

also testified that while there were allegations in the private complaint "that [the mother] was unable to take care of the child [and] . . . allegations made that she's not mentally capable to take care of [D. W.]," he had no evidence that the allegations were true and was testifying based on the information in the probable cause order. He further testified that he spoke with the grandmother and the mother's sister in his investigation; the grandmother was concerned that the mother had mental health issues that were not medicated, and the sister recounted an "instance where [the mother] was spanking the child." The caseworker acknowledged that DFACS did not have a current mental health evaluation for the mother.

The grandmother testified that the mother lived with her for approximately two months before D. W. was born and for another two months after the child was born. The mother moved out and got her own apartment, but the grandmother testified that she helped the mother financially with her rent. She testified that after a couple of months, the mother left the apartment and moved in with another family, then moved back in with the grandmother. The mother and D. W. were residing with the grandmother at the time the complaint was filed. The grandmother testified that she was concerned about the way the mother cared for D. W. because some days when she came home from work, the baby would still be in its pajamas, her diaper would

3

be dirty, and the baby would be hungry. She also testified that for six months she furnished the child's baby food, milk, and diapers, and that D. W. was "ten months old before she had her first real bed," which the grandmother said she bought. She also testified that the mother would hang out late at night and sometimes have D. W. out late "in the street."

The grandmother testified that the mother had been diagnosed as "mildly mentally retarded," dyslexic, and "[s]he's ADHD and . . . something called OCD or ODC, or something of that nature, as well as learning disabilities." The grandmother testified that the mother did not exercise patience with D. W., that on one occasion the mother "snatched" the child by one arm from the grandmother's arms, and that she had called the police because D. W. was sitting in her walker "screaming" and "hollering" and the mother told the grandmother to "shut [her] mouth up and get out of there."

Over her own objection, the mother was called to testify at the hearing. She testified that she was employed making t-shirts and received social security benefits, and presently lived with a female friend. The mother testified that she did not know how much money she earned or received from Social Security. She testified that she had taken the baby out with her late at night to go over to a "friend's house." She

4

denied staying out until the early morning hours with D. W." The mother agreed that she suffered from an anger issue. She also admitted that she had "yanked [D. W.] from her [mother] by one arm," but she denied that police were called after the issue.[2] The mother also denied ever spanking D. W. The mother testified that she had housing for the child and could provide for her.

The court found the child deprived and continued temporary custody in DFACS. The court based the deprivation finding upon the determination that the mother was unable to provide adequate care, control or supervision of D. W., and that she "may have mental health challenges, which when untreated, impair her ability to provide appropriate care for the child." The mother appeals, contending, among other things, that there was no clear and convincing evidence of D. W.'s deprivation while in her care.

1. Regarding the mother's contention that the trial court erred in denying her motion to dismiss because the petition failed to allege present deprivation, the juvenile court has exclusive original jurisdiction over a child alleged to be deprived.

---

[2] The mother informed the trial court more than once during her testimony that she did not want to continue testifying and that she was "getting mad."

OCGA § 15-11-28 (a) (1) (C). The mother does not contest the juvenile court's jurisdiction in this case, but instead she maintains that the allegations of deprivation in the petition were not valid. We do not agree.

Here, the petition clearly makes allegations of deprivation as defined by OCGA § 15-11-2 (8). Pursuant to that statute a "'[d]eprived child' means a child who . . . [i]s without proper parental care or control." Id. Because deprivation actions are civil cases under Georgia law, See *In the Interest of A. M. R.*, 230 Ga. App. 133, 136 (2) (495 SE2d 615) (1998), "the Georgia Civil Practice Act requires only notice pleading [which should be]. . . construed liberally and reasonably [.]" *Rucker v. Columbia Nat. Ins. Co.*, 307 Ga. App. 444, 446 (1) (a) (705 SE2d 270) (2010). Thus, DFACS was only required to put forth plainly-stated allegations in the petition which, taken as true, would support a finding of deprivation. See *Davis v. Metzger*, 119 Ga. App. 750, 751 (2) (168 SE2d 866) (1969) (Pleadings serve to give notice to the opposing party of the general nature of the contentions, and thus "general allegations are sufficient to support a plaintiff's claim for relief.")

Accordingly, this enumeration fails.

2. The mother also contends that the trial court erred by taking judicial notice of her DFACS records from when she was a minor in DFACS custody.

6

Judicial notice is intended to eliminate the need for formal proof as to: (1) matters which the general public has common knowledge of; (2) facts which are readily ascertainable by reference to some reliable source, and are beyond dispute; and (3) matters which are in the special province of the judge. Moreover, a court may take judicial cognizance of records on file in its own court.

(Citation and punctuation omitted.) *In the Interest of S. D.*, 316 Ga. App. 86, 88 (1) (728 SE2d 749) (2012).

At the deprivation hearing, the trial court stated that it would "take judicial notice of [the mother's] file number . . . in which [the mother] was a minor child in DFACS custody, . . . her mental history records and information, and the findings of facts. All this was made known at the probable cause hearing." A transcript of the probable cause hearing was not included in the record. The findings of facts detailed in the probable cause order were:

The mother is mildly mentally [challenged] and is not capable of parenting child. Mother cannot feed or care for child properly or without assistance. Mother would only give child milk when she needed baby food. Mother would not care for child properly and child was not kept clean and constantly had diaper rash. Mother has anger problems and does not talk to or handle child appropriately. Mother was under care of psychologist and psychiatrist but stop[ped] going in 2006.

7

There is no reference to the mother's DFACS case nor exhibits included in the record. The order reflects that only the mother, the aunt, the grandmother, the mother's attorney, D. W., and a child advocate were present at the probable cause hearing. Thus, as in *In the Interest of S. D.*,

> [e]ven if we assume that the juvenile court could properly take judicial notice of the [mother's DFACS records] . . . for purposes of [D. W.'s] case, . . . these documents [were not] tendered into evidence, . . . and there was no testimony as to the contents of these documents. We must therefore conclude that the juvenile court could not consider the evaluation or report to determine whether [D. W.] was without proper parental care or control, or that the mother is unfit to parent [D. W.]

Id at 89 (1).

3. Under OCGA § 15-11-2 (8)(A), a child is deprived if he or she "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." "The definition of a deprived child, as contained in OCGA § 15-11-2 (8), focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Footnote,

punctuation, and emphasis omitted.) *In the Interest of J. P*., 267 Ga. 492 (480 SE2d 8) (1997).

> To authorize even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.

(Punctuation omitted.) *In the Interest of S. S*., 232 Ga. App. 287, 289 (501 SE2d 618) (1998). An order temporarily transferring custody of a child based on alleged deprivation must be "grounded upon a finding that the child is at the *present time* a deprived child," (emphasis supplied) *In re J. C. P*., 167 Ga. App. 572, 576 (307 SE2d 1) (1983), and "[a] finding of parental unfitness is essential to support an adjudication of present deprivation." (Emphasis in original.) Id. at 575.

Applying the appropriate standard of review, we do not find clear and convincing evidence sufficient to enable a rational trier of fact to conclude that D. W. is presently deprived. According to the juvenile court's order, the child was deprived because of the mother's mental impairment and inability to care for the child. There was, however, absolutely no reliable or competent evidence of the mother's present

9

mental impairment. The DFACS case worker testified at the hearing that he had no evidence of the mother's impairment or the mother's inability to care for D. W., but that his knowledge was based upon the probable cause order and interviews with the grandmother and aunt. There is no psychological evaluation included in the record, or reports from treating physicians, or medical reports indicating any mental impairment or how said mental impairment might limit the mother's parental abilities. The only other evidence in this regard was from the grandmother about the mother having ADHD, learning disabilities, and being "mildly retarded."

Pursuant to OCGA § 15-11-94 (b) (4) (B) (i), evidence of a deficiency in the parent's physical, mental, or emotional health must be "medically verifiable" and "of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child." See *In the Interest of A. G. I.*, 246 Ga. App. 85, 87-88 (2) (a) (539 SE2d 584) (2000). No such showing was made here. The record before us does not establish by clear and convincing evidence that the mother lacked proper parenting skills or that the child was not being properly cared for. See *In the Interest of S. J.*, 270 Ga. App. 598, 609 (1) (c) (607 SE2d 225) (2004) (finding of deprivation reversed where, among other things, juvenile court's finding that mother exhibited a medically verifiable deficiency

10

so as to render her unable to provide for her child was not supported by the evidence.) "Other than the mother's admission of her [anger issues], the only other evidence in this regard was hearsay and conjecture from laypersons." *In the Interest of K.S.*, 271 Ga. App. 891, 893 (611 SE2d 150) (2005).

As this court has noted previously, "[t]he right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." *In re S. E. H.*, 180 Ga. App. 849, 851 (350 SE2d 833) (1986). That standard has not been met in this circumstance. In order to justify even a temporary transfer of custody, the deprivation must be based upon the unfitness of the parent. Here, there was no competent evidence presented that the mother was unfit to care for her child, and that D. W. was a deprived child at the time of the deprivation hearing.

Accordingly, the juvenile court erred in finding D. W. deprived.

4. We find no error in the juvenile court's decision to include the grandmother as a party to the proceeding. Pursuant to OCGA § 15-11-39 (b), during a deprivation proceeding the juvenile court has discretion to determine "proper or necessary parties to the proceeding [and require] them to appear before the court at the time fixed to

11

answer the allegations of the petition." Moreover, "a party is entitled to counsel in the proceedings." OCGA § 15-11-39 (d).

Thus, we find no error regarding this contention.

*Judgment reversed. Adams, and McFadden, JJ., concur*.