**FOURTH DIVISION
DOYLE, P. J.,
MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 26, 2013**

# In the Court of Appeals of Georgia

A13A0410. IN THE INTEREST OF R. B., a child. DO-024

DOYLE, Presiding Judge.

The mother of 18-month-old R. B. appeals from the juvenile court's deprivation order. On appeal, the mother argues that R. B. is not deprived within the meaning of OCGA § 15-11-2 because the evidence was insufficient to support the juvenile court's finding that R. B. was currently deprived. For the reasons that follow, we affirm.

"In considering an appeal from the juvenile court's deprivation order, we review the evidence from the juvenile court hearings in the light most favorable to the

court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child[ was] deprived."[1]

The record shows that on March 20, 2012, the Department of Family and Children Services ("the Department") moved for entry of an order for shelter care of R. B., who was three months old at that time, based on the stated risk that the child was in imminent danger of sexual abuse by a member of the household. The Department also filed a deprivation complaint with regard to R. B., alleging that the mother's five year old child, A. B., had been in foster care since August 2011. The complaint alleged that the mother had ongoing mental health and substance abuse issues; had failed to comply with her case plan regarding A. B.; and reported that her live-in boyfriend, who was also the purported father of R. B., had sexually abused A. B.

On March 22, 2012, the juvenile court entered a probable cause order that continuation in the home would be contrary to the welfare of R. B., finding allegations that the mother had mental health issues. A revised probable cause order was entered on March 26, 2012, in which the juvenile court amended its earlier

---

[1] (Punctuation omitted.) *In the Interest of D. W.*, 318 Ga. App. 725 (734 SE2d 543) (2012).

findings, stating that the mother had mental health issues and did not cooperate with the Department and the putative father had a sexual abuse allegation lodged against him but remained in the home; the court awarded temporary custody of R. B. to the Department.

On March 29, 2012, the Department filed a deprivation proceeding against the mother, asking that the juvenile court temporarily place R. B. with the Department and asking for a reunification plan with regard to the mother and R. B. At the hearing on the deprivation petition, Brenda Lewis, a supervisor at the Department, testified that A. B., who was in the custody of the Department at the time of the hearing, was taken into custody because of an allegation of sexual abuse by R. B.'s putative father, and when a Department employee visited the rooming home to investigate the complaint, A. B. was found alone; the mother had reportedly left the child with an unrelated adult named "Midnight," who was not in the rooming home when the Department came to investigate. A hearing was held on February 17, 2012, with regard to A. B., at which time the mother stated that the putative father was living with her and R. B. Based on the previous sexual abuse complaint made against the putative father, the Department removed R. B. and filed the instant deprivation petition.

3

Lewis also testified that the mother lived in an apartment and received social security and disability benefits; Lewis testified that the mother told her she had criminal charges pending, but Lewis could not testify as to the nature of those charges. Lewis testified that other than the putative father's presence in the home, the Department was "concerned that mom had not completed the required evaluation and assessments in order to gauge her parental capacity with this newborn . . . and also to gauge where she is with all of the other concerns, such as domestic violence, substance abuse, and her mental health status." Lewis also stated that the mother had a third child that was not in her custody.

On cross-examination, Lewis testified that the Department was aware that R. B. was born in December 2011, and the event that precipitated the child's removal was the mother's admission to the Department in February 2012 that the putative father was living in the home with R. B. Lewis explained that the Department had been unable to complete its investigation of the complaint of sexual abuse of A. B. by the putative father because the mother's whereabouts were unknown for some time, and the putative father had not made himself available to the Department. After the hearing in February 2012, the Department sent a caseworker to the mother's home and explained that the allegations against the putative father were never fully

4

investigated, and Lewis was unaware of whether the Department employee at that meeting suggested to the mother that she should have the putative father leave the house. Lewis admitted that between the time R. B. was born and the time she was removed, the mother had "provided what she needed."

The Department case manager for A. B.'s case testified that the mother had not been compliant with her case plan with regard to A. B. A. B.'s case manager also testified that the mother was the person who made the allegation that the putative father had sexually abused A. B.

The juvenile court entered an order finding R. B. to be deprived on April 19, 2012, nunc pro tunc for April 4, 2012.

The mother contends that the juvenile court erred by finding that R. B. was deprived because OCGA § 15-11-2 (8)(A) requires a showing of *current* deprivation, and there was no competent evidence that (1) the mother had mental health issues to warrant a finding of deprivation; (2) the mother was not providing an appropriate home or was not providing for R. B.'s needs; or (3) R. B. was at risk from being in the home with her putative father based on the unsubstantiated accusations of abuse of another sibling.

Under OCGA § 15-11-2 (8) (A), a child is deprived if he or she is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. The definition of a deprived child, as contained in OCGA § 15-11-2 (8), focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue. To authorize even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. An order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is *at the present time* a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation.[2]

Nevertheless,

when it is established that a parent has previously deprived, neglected, or abused one or more of his or her children and that the detrimental conditions existing at that time have not significantly changed, a juvenile court is under no obligation to return a child to the parent and

---

[2] (Citations and punctuation omitted; emphasis in original). *In the Interest of K. S.*, 271 Ga. App. 891, 892-893 (611 SE2d 150) (2005).

wait until the child is harmed in order to find that there is evidence of that child's *current* deprivation.[3]

A review of the hearing testimony and record establishes clear and convincing evidence sufficient to conclude that R. B. was presently deprived. As an initial matter, despite the mother's argument to the contrary, the juvenile court is allowed to hear and weigh evidence of the past deprivation of other siblings when assessing the current deprivation of a child.[4] The mother is correct that there is no competent evidence to support the finding that the mother's alleged mental health issues would cause R. B. immediate harm.[5] Additionally, the mother is correct that to the extent that the previous deprivation of A. B. was based on her failure to show adequate housing and income to support that child, there has been a change in her circumstance

---

[3] (Emphasis in original.) *In the Interest of R. B.*, 309 Ga. App. 407, 408 (1) (710 SE2d 611) (2011).

[4] See id. at 408 (1); *In the Interest of A. R.*, 287 Ga. App. 334, 336 (651 SE2d 467) (2007) ("A juvenile court may consider a mother's inability to properly care for one child as evidence that she will not be able to care for her other children.").

[5] See *In the Interest of D. W.*, 318 Ga. App. at 730 (3) ("Pursuant to OCGA § 15-11-94 (b) (4) (B) (i), evidence of a deficiency in the parent's physical, mental, or emotional health must be 'medically verifiable' and 'of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child.'").

in that she is living in an apartment rather than a rooming house, she has social security/disability income, and as testified to by A. B.'s case worker, she was providing for R. B.'s needs between the time of her birth and the removal.

Nevertheless, there is evidence in the record that the mother herself made the sexual abuse allegation against the putative father, and the mother had failed to comply with the case plan for A. B., including all necessary investigations into that complaint. Furthermore, although she was not directly instructed to have the putative father leave the home or to remove R. B. from his presence somehow, she also did not take any steps to do so. Thus, the juvenile court's finding that R. B. was presently deprived because she was living in the home where the putative father was residing despite the sexual abuse allegation is supported by the record, as is the juvenile court's finding that the mother had failed to comply with the case plan for A. B., including any investigation of the sexual abuse allegations against the father.[6]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[6] Compare with *In the Interest of K. S.*, 271 Ga. App. at 891-892 (reversing deprivation finding based on the child's residence at the maternal grandparent's home when maternal grandfather had been subject of sexual abuse allegation approximately six years earlier and case was closed for lack of evidence supporting the allegation and no other evidence of lack of fitness was found on the part of the mother).

8