**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 31, 2012**

# In the Court of Appeals of Georgia

A12A0245. IN THE INTEREST OF S. D., a child.                    BO-012

BOGGS, Judge.

The Fulton County Department of Family and Children Services ("DFACS")

filed a deprivation complaint alleging that one-day-old S. D. was deprived because

his teenage mother was herself in DFACS custody and was unable to care for the

child. When S. D. was six days old, DFACS filed a deprivation petition. Following

a hearing, the juvenile court found S. D. deprived and awarded temporary custody of

the child to DFACS. The mother appeals,[1] and for the reasons that follow, we reverse.

A deprived child is defined as a child who "[i]s without proper parental care

or control, subsistence, education as required by law, or other care or control

---

[1] The child advocate attorney for S. D. also filed a brief enumerating essentially the same errors as the mother's brief and also asserting that the juvenile court erred in exercising jurisdiction over the deprivation petition.

necessary for the child's physical, mental, or emotional health or morals. OCGA § 15-11-2 (8) (A).

> In determining whether a child is deprived, the court focuses on the needs of the child rather than parental fault. And a temporary loss of custody is not authorized unless the deprivation resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. On appeal from a finding of deprivation, we review the evidence in the light most favorable to the juvenile court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived and whether, under the circumstances, the court properly awarded temporary custody of the child.

(Citations, punctuation and footnote omitted.) *In the Interest of J. H.*, 310 Ga. App. 401-402 (713 SE2d 472) (2011).

So viewed, the record shows that DFACS filed a deprivation complaint when S. D. was one day old. The complaint alleged that the 16-year-old mother was in DFACS custody and "not capable of caring and providing for [the] child." The same day, the juvenile court issued a probable cause order finding that probable cause existed to suspect that S. D. was deprived because the minor mother was in DFACS

2

custody, refused to go to school, was unemployed and without independent housing, and was unable to independently provide for S. D. The order did note however, that the mother had completed parenting classes, and that the child's maternal great-grandmother's home had been approved to house S. D. and his mother upon their release from the hospital.

Following the deprivation complaint resulting in S. D. being placed in shelter care,[2] DFACS filed a deprivation petition when S. D. was six days old. The petition alleged that S. D. was deprived because the mother was in the temporary custody of DFACS, without resources to provide for the financial needs of the child and also without independent housing, the father's whereabouts were unknown, he had failed to legitimate the child, and failed to provide the child with a home, care or support.

At the hearing on the deprivation petition, a DFACS case manager testified that S. D. had been placed with his mother in the home of the maternal great-grandmother who receives "[f]unding from the Department," furniture, and food for both S. D. and his mother, and admitted that even if S. D. were no longer in the temporary custody of DFACS, the great-grandmother would still receive a per diem for S. D.'s care. The case manager stated that S. D.'s needs were being met, and that the child had not

[2]See OCGA § 15-11-45.

suffered any "abuse, neglect, or maltreatment." The case manager admitted that DFACS became involved with the child only because he was a "child born[e] by a child in custody" and the "likelihood" of "possible future deprivation." As of the date of the hearing, the mother continued to participate in ongoing parenting classes, and there was no psychological evaluation or parental assessment conducted on the mother since S. D.'s birth. The case manager explained that while in the hospital, the mother took "care of the child like she was supposed to" and that there were no "allegations from the hospital staff that she did not take care of him properly." After leaving the hospital, the mother attended all of S. D.'s medical appointments.

A life coach with Teen Parent Connection who had worked with the mother for six months testified that the mother had been compliant with all classes and that she observed the mother with the child after they came home. She explained that the mother was "very attentive" to S. D., that she did not feel that S. D. was at risk while in the mother's care, and that she believes the mother is competent enough to parent S. D.

At the hearing, the juvenile court took judicial notice of a psychological evaluation of the mother conducted several months before S. D. was born, which reportedly concluded that the mother has unspecified "behavioral problems." The

4

court also took judicial notice of a citizen review panel's report from the mother's case that had been prepared about four months before the birth of S. D. Neither of these documents were made a part of the record.

Following the hearing, the juvenile court found S. D. to be deprived as to his mother because of her inability to provide S. D. with a home, care and support, and ruled that S. D. "cannot be adequately and safely protected at home." The court awarded DFACS temporary custody of S. D., approved a caseplan submitted by DFACS, and ordered a permanency plan for reunification. The court acknowledged that it sua sponte took judicial notice over objection of the mother's "Citizen's Review Panel report" and psychological evaluation, both issued in the mother's case several months before S. D.'s birth.[3]

1. The mother and the child advocate argue that the juvenile court erred in taking judicial notice of, and in relying upon, the psychological evaluation and citizen review panel's report issued in her case prior to S. D.'s birth. "Judicial notice is intended to eliminate the need for formal proof as to: (1) matters which the general public has common knowledge of; (2) facts which are readily ascertainable by

---

[3]The juvenile court also found as fact that the "minor mother was hospitalized at Laurel Ridge for behavioral problems." But the record reveals no evidence of this fact.

5

reference to some reliable source, and are beyond dispute; and (3) matters which are in the special province of the judge." *Graves. v. State*, 269 Ga. 772, 774 (2) (504 SE2d 679) (1998), overruled in part on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2) (537 SE2d 80) (2000).

Moreover, "[a] court may take judicial cognizance of records on file in its own court." (Citation, punctuation and footnote omitted.) *In the Interest of S. N. H.*, 300 Ga. App. 321, 328 (3) (685 SE2d 290) (2009). This rule originates from the Georgia Supreme Court's decision in *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107) (1984), addressing whether a trial court in a renewal action may take judicial notice of the record in the previously dismissed suit. Id. at 104. Thus, this rule appears to be limited to circumstances involving a prior case between the same parties in the same court. See also id.; *In the Interest of S. N. H.*, supra (in termination case parties stipulated to judicial notice of underlying deprivation action); *Mumford v. Davis*, 206 Ga. App. 148, 149 (424 SE2d 306) (1992).

Even if we assume that the juvenile court could properly take judicial notice of the psychological evaluation and the citizen review panel's report, both submitted in the mother's case, for purposes of S. D.'s case, neither of these documents were tendered into evidence, compare *In the Interest of B. M.*, 252 Ga. App. 716, 719-720

6

(1) (556 SE2d 883) (2001) (parties raised no objection to introduction of prior termination orders), and there was no testimony as to the contents of these documents. We must therefore conclude that the juvenile court could not consider the evaluation or report to determine whether S. D. was without proper parental care or control, or that the mother is unfit to parent S. D. See *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008) (error in referring to mother's psychological evaluation not in record, but harmless); see also *In the Interest of K. S.*, 271 Ga. App. 891, 893-894 (611 SE2d 150) (2005) (no medical or psychological evidence of mother's mental impairment nor any testimony that a mental impairment might limit mother's parental abilities).

2. The mother argues that the evidence was insufficient to show that S. D. was presently deprived within the meaning of OCGA § 15-11-2 (8) (A). We agree. As we have held in Division 1 that the citizen review panel's report and psychological evaluation from the mother's case cannot be considered, we view the remaining evidence for sufficiency.

Here, the scant record before us reveals no evidence that S. D. was without proper parental care or control necessary for his physical, mental, or emotional health or morals. To the contrary, the evidence demonstrated that the mother properly cared

7

for S. D. and that S. D.'s needs were being met. The DFACS case manager admitted that the only reason DFACS filed the deprivation petition was because the mother herself was in DFACS care and because of possible future deprivation. This is not the standard. The State must present evidence of *present* deprivation, and in this case it failed to do so. See *In the Interest of C. L. C.*, 299 Ga. App. 729, 734-735 (1) (683 SE2d 690) (2009) (deprivation petition must allege present deprivation, not past or potential future deprivation).

Moreover, we find no authority providing that there is a presumption of deprivation of a child simply because the child's mother is also in DFACS care, and DFACS has cited none. Because here there was insufficient clear and convincing evidence that S. D. was deprived, the juvenile court erred in making such a finding and we must reverse. See *In the Interest of J. H.*, supra, 310 Ga. App. at 402-404 (reversing finding of deprivation where no evidence presented that child was harmed by dirty home, physical discipline, or wearing only diaper in summer); *In the Interest of K. S.*, supra, 271 Ga. App. at 893-894 (reversing finding of deprivation where record contained no medical or psychological evidence of mother's mental impairment nor any testimony that a mental impairment might limit mother's parental

8

abilities, no evidence child was at risk for abuse, no evidence that mother lacked proper parenting skills, and no evidence child was not being properly cared for).

3. As we have held in Division 2 that there was insufficient evidence to support the juvenile court's finding that S. D. was deprived, and there was no evidence that any unfitness on the part of the mother resulted in abuse or neglect of S. D., the court also erred in transferring custody of S. D. to DFACS. See *In the Interest of K. S.*, supra, 271 Ga. App. at 894 (where no evidence child was deprived, court erred in removing child from mother's custody); *In the Interest of E. M.*, 264 Ga. App. 277, 281 (590 SE2d 241) (2003) (same); *In the Interest of M. L. C.*, 249 Ga. App. 435, 439 (2) (548 SE2d 137) (2001) (same).

*Judgment reversed. Doyle, P. J. and Andrews, J., concur.*