**SECOND DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J. and RAY, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 22, 2013**

# In the Court of Appeals of Georgia

A13A0011. IN THE INTEREST OF R. L., a child.          DO-002

DOYLE, Presiding Judge.

Following a juvenile court's finding that one-year-old R. L. is a deprived child due to the lack of care provided by his mother, R. L. appeals through his attorney. Because the record does not support a finding of deprivation, we reverse.

"In considering an appeal from the juvenile court's deprivation order, we review the evidence from the juvenile court hearings in the light most favorable to the court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived."[1]

---

[1] (Punctuation omitted.) *In the Interest of D. W.*, 318 Ga. App. 725 (734 SE2d 543) (2012).

So viewed, the record shows that in September 2011, a case worker from the Department of Family and Children Services ("DFCS") visited the home where R. L. was living with his mother and maternal grandmother. The mother was 19 years old and unemployed as she pursued her high school diploma, and the grandmother had temporarily become unemployed. Due to an unpaid electricity bill, the electricity had been turned off at the grandmother's house. The case worker noticed that all other needs of the child were being met and did not seek a shelter care order at that time.

In early November 2011, the case worker returned to the house, and due to the colder weather and the continued lack of electricity, the case worker attempted to find other housing for the mother and child. They moved to the paternal grandmother's house, where the father also lived, and after about two weeks, the mother and father got into a physical altercation. The mother and child were no longer welcome at that residence, so the caseworker obtained a temporary shelter order, and the child was taken into temporary custody by DFCS.

On November 22, 2011, the juvenile court held a hearing at which the DFCS caseworker testified. The caseworker described her investigation of the case and the temporary placement of R. L. At the time of the hearing, the mother had moved into the house of a family friend who had volunteered to let her stay with him. A court

2

appointed special advocate ("CASA") had inspected the house and found it to be a suitable home environment for R. L. and the mother, but DFCS had not yet inspected it, despite being ordered to by the trial court 12 days prior to the hearing. The trial court ultimately found R. L. deprived based on findings of "no stable housing, no stable income, domestic violence, emotional abuse because the child was around domestic violence." Nevertheless, the court placed the child in the custody of the mother subject to a protective order. The child now appeals.

1. As a preliminary matter, we address, sua sponte, the child's standing to bring this appeal.[2] In the juvenile court and on appeal, the child was represented by an attorney from the Fulton County Office of the Child Attorney ("OCA"). Also participating in the juvenile court were a CASA coordinator and the CASA volunteer assigned to the case, neither of whom were attorneys. In a similar case, *In the Interest of W. L. H.*, the Georgia Supreme Court recently held that a minor child, "acting through his attorney and against the wishes of his guardian ad litem, lacked standing to appeal the trial court's finding of deprivation."[3] In that case, the court-appointed

---

[2] See *In the Interest of W. L. H.*, 314 Ga. App. 185, 186 (723 SE2d 478) (2012), affirmed by *In the Interest of W. L. H.*, __ Ga. __ (Case No. S12G1049, decided Mar. 4, 2013).

[3] *In the Interest of W. L. H.*, __ Ga. at *9.

3

guardian ad litem had expressly concluded that, due to treatment available to the child while in the custody of DFCS, an appeal of the deprivation finding would not be in the best interest of the child.[4] Therefore, the guardian had actually filed a brief in opposition to the appeal brought by the child's attorney.[5] Based on the conflict between the attorney and the guardian, the Supreme Court held that the child had no standing to bring an appeal through the attorney against the advice and wishes of the guardian.

In the present case, the record reveals no conflict between the CASA volunteer participating in the juvenile court and the OCA attorney representing the child in the juvenile court. Indeed, the record demonstrates acquiescence by the CASA volunteer, a non-attorney, in the appeal brought as a matter of course by the child's appointed legal advocate. Thus, there is no conflict between the CASA volunteer and the OCA attorney representing the child, and *W. L. H.* does not control this case.[6] Accordingly, we discern no lack of standing by the child to bring this appeal.

---

[4] See id. at *8.

[5] See *In the Interest of W. L. H.*, 314 Ga. App. at 187.

[6] Cf. *In the Interest of J. C. W.*, 318 Ga. App. 772, 779-780 (1) (734 SE2d 781) (2012) (predating Supreme Court opinion in *W. L. H.* but distinguishing the facts of that case).

2. Turning to the merits of the appeal, we consider R. L.'s argument that the trial court erroneously made a finding of deprivation.

> As defined in OCGA § 15-11-2 (8) (A), a deprived child is a child who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. In considering a deprivation petition, the petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue. The deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[7]

As this Court has explained, the State has the burden at a deprivation hearing to adduce "evidence of *present* deprivation."[8] At the hearing, the DFCS case worker testified that her only concern was the adequacy of the mother's housing. She had observed that R. L. was healthy, appropriately fed and clothed, and up to date on his

---

[7] (Citations and punctuation omitted.) *In the Interest of R. M.*, 276 Ga. App. 707, 715 (624 SE2d 182) (2005).

[8] (Emphasis in original.) *In the Interest of S. D.*, 316 Ga. App. 86, 89 (2) (728 SE2d 749) (2012). See *In the Interest of J. J.*, 317 Ga. App. 462, 463 (1) (731 SE2d 766) (2012) ("The [S]tate must present evidence of present deprivation, not past or potential future deprivation.").

immunizations except for one missed and rescheduled appointment "in the midst of [R. L.] coming into care." But with respect to housing, the mother had followed through with her plan to move in with the family friend, who offered adequate housing with a separate bedroom for the mother and R. L. Consistent with this, counsel for DFCS conceded that "[i]t does not appear that the housing situation that was alleged in my deprivation petition still exist[s] today." DFCS noted that before R. L. was taken into DFCS custody, he was adequately cared for except for the lack of electricity: "I don't think that anybody has ever expressed any concerns of the mother's ability to care for this child." Thus, while acknowledging that the circumstances had changed and that the mother had relocated, DFCS maintained that the only remaining concern was the fact that DFCS had not yet completed an evaluation of the mother's new residence. This evaluation was still pending despite the court's earlier order to complete it, and CASA had completed its own evaluation finding no concerns with the mother's new housing. It is clear that had DFCS conducted a timely and favorable evaluation, it would have had no reason to argue that the mother was not meeting the needs of the child.

This record simply does not contain clear and convincing evidence supporting a finding of present deprivation.[9] Such a finding must be based on some misconduct of the mother "resulting in the abuse or neglect of the child or . . . what is tantamount to physical or mental incapability to care for the child."[10] The mother's parenting ability has never been called into question, and the only other issue identified in the record is a single altercation between the father and mother, who no longer reside together. The incident did not involve abuse of R. L., who was two months old at the time, and the record contains no allegation nor proof of harm to R. L. Without more, the record before us fails to support a finding of deprivation.[11]

*Judgment reversed. Barnes, P. J. and Ray, J., concur.*

---

[9] Cf. *In the Interest of C.T.*, 286 Ga. App. 186, 190 (2) (648 SE2d 708) (2007) ("although the mother may struggle financially and indeed may need assistance in the care of her children, the mere fact that she earns little money and lives in a modest home does not constitute clear and convincing evidence that the mother is unfit").

[10] *In the Interest of R.M.*, 276 Ga. App. at 715.

[11] See *In the Interest of H. S.*, 285 Ga. App. 839, 842 (648 SE2d 143) (2007) (reversing a finding of deprivation absent a showing of harm when the child witnessed one incident of domestic violence).