**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 11, 2013**

# In the Court of Appeals of Georgia

A13A0211. IN THE INTEREST OF L. K., a child.

MCFADDEN, Judge.

The mother of L. K. appeals from a juvenile court judgment finding that the child is deprived and placing her in the custody of the Department of Family and Children Services. Because there is not sufficient evidence to support the juvenile court's finding of deprivation, we reverse.

> When reviewing a juvenile court's finding of deprivation, this Court views the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

*In re D. S.*, 316 Ga. App. 296 (728 SE2d 890) (2012). (Citation omitted.)

So viewed, the evidence shows that the 17-year-old mother and infant L. K. lived with L. K.'s maternal grandmother in the grandmother's residence. On December 16, 2011, the department filed a deprivation petition alleging that both the mother and L. K. have sickle cell anemia and that the mother is unable to meet her infant daughter's medical needs. On December 19, 2011, after a probable cause hearing, the juvenile court dismissed the petition because there was no current deprivation or medical neglect, but ordered the department to provide protective services to the family for 120 days. Three days later, on December 22, 2011, the mother was taken to the hospital, possibly due to illness related to her sickle cell condition. A department caseworker was called to the hospital, where he learned that the mother could not reach the grandmother. The day before, the grandmother had left to go to Michigan for two weeks to care for a relative who had suffered a stroke. The caseworker tried unsuccessfully to get in touch with the grandmother and other family members to care for L. K. while the mother was in the hospital. The department then obtained shelter care custody of both the mother and L. K. Thereafter, the department filed the instant petition alleging that L. K. was deprived.

Under OCGA § 15-11-2 (8) (A), a child is deprived if he or she is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. The definition of a deprived child, as contained in OCGA § 15-11-2 (8), focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue. To authorize even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. An order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is *at the present time* a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation.

(Citations and punctuation omitted; emphasis in original.) *In the Interest of K. S.*, 271 Ga. App. 891, 892-893 (611 SE2d 150) (2005).

Here, the juvenile court concluded that "[t]he causes of the deprivation as to the mother are: inability to provide the child with a home, care and support without the assistance of the [d]epartment." However, there was no evidence that the mother was unable to provide a home; rather, the evidence unequivocally showed that the mother and child lived with the grandmother in the grandmother's home. While a social worker voiced concern that the residence was in a senior citizen's complex, there was no evidence presented that the complex or home was an inappropriate or

3

inadequate place for the mother and child to reside. See *In the Interest of E. M.*, 264 Ga. App. 277, 281 (590 SE2d 241) (2003) (reversing deprivation finding where, contrary to juvenile court's finding, evidence showed that father, with assistance of others, "had always managed to put a roof over [child's] head" and at the time of the deprivation hearing had found at least temporary housing).

As for the mother's inability to care for the child, there again was no clear and convincing evidence of such inability and the department has cited none. On the contrary, the social worker called as a witness by the department testified that the mother is "a good mother" and that based on her observations over several months she never had any concerns about abuse or neglect by the mother. A placement worker also testified that she had no concerns about the mother's ability to care for the child, had seen no signs that the child is deprived, and had no concerns about medical care because the mother "does a good job" and takes L. K. to the hospital if something is wrong. Likewise, the department case worker testified that when he saw the baby at the hospital he saw no signs of dehydration or malnourishment and that the baby was appropriately dressed. Both the grandmother and the child's father also described the mother as an "excellent" mother.

The juvenile court further found that L. K. was without proper parental care and supervision because "the child's mother is a minor mother in the care of the [d]epartment." However, as this court has previously held, "we find no authority providing that there is a presumption of deprivation of a child simply because the child's mother is also in [the department's] care, and [the department] has cited none." *In the Interest of S. D.*, 316 Ga. App. 86, 89 (2) (728 SE2d 749) (2012).

The juvenile court also found that the mother and child had been left in the home without adequate food while the grandmother was in Michigan. Not only does such a finding pertain to past, rather than present, deprivation, see *In the Interest of S. D.*, supra, but once again there was not clear and convincing evidence to support the finding. While the department case worker initially testified that the mother had told him that she had been left with no food, he later clarified that the mother did *not* say that she had been left without food, but instead had said that she had no food stamps or money. The only direct testimony concerning food in the house came from the father, who testified that he had looked in the refrigerator and cabinets and seen that there was food in the house. And although the juvenile court made no factual finding about money, the case worker's testimony that the mother had said she had no money was contradicted by the grandmother's testimony that money for the

5

mother and child had been left with a neighbor, and by the father's testimony that he had given the mother $150.

It appears from the evidence presented at the deprivation hearing, comments by the juvenile court judge at the hearing and the final order, that in addition to the issues discussed above, the juvenile court's primary concern centered around the fact that when the mother was hospitalized there was no relative available to take care of L. K. As the juvenile court judge stated at the conclusion of the hearing, "[t]he mother could not supervise[] the child because the mother was in care. There was nobody to take care of the child." However, it was undisputed that by the time of the deprivation hearing the mother was no longer hospitalized, and the grandmother had returned home and she wanted both the mother and L. K. to return to her home. Under the circumstances of such a temporary emergency illness, where there is not clear and convincing evidence that the child was at imminent risk of abuse or neglect other than the risks arising from being without a caretaker, the appropriate remedy would have been emergency placement of the child with the department, rather than a finding of deprivation and removal of the child from the mother's custody. See OCGA § 15-11-14. (Authorizing the department to provide emergency care and supervision without seeking a court order).

6

The clear and convincing standard

> safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.

(Citation omitted.) *In the Interest of E. M.*, supra at 278. Here, contrary to the determination of the juvenile court, the isolated instance of the child being without supervision due to an emergency hospitalization does not constitute parental unfitness authorizing the finding of deprivation and severance of the parent-child custodial relationship. Accordingly, we reverse.

*Judgment reversed. Doyle, P. J., and Boggs, J., concur.*

7