**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 12, 2013**

# In the Court of Appeals of Georgia

A13A1587. IN THE INTEREST OF R. S. T.

BOGGS, Judge.

The mother of R. S. T. appeals from the juvenile court's order finding the child deprived.[1] Because the Department has failed to present clear and convincing evidence of the present deprivation of R. S. T., we reverse.

A deprived child is defined as a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A).

---

[1] The child advocate attorney for R. S. T. also filed a brief enumerating essentially the same errors as the mother's brief and urging reversal.

In determining whether a child is deprived, the court focuses on the needs of the child rather than parental fault. And a temporary loss of custody is not authorized unless the deprivation resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. On appeal from a finding of deprivation, we review the evidence in the light most favorable to the juvenile court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived and whether, under the circumstances, the court properly awarded temporary custody of the child.

(Citations, punctuation and footnote omitted.) *In the Interest of J. H.*, 310 Ga. App. 401-402 (713 SE2d 472) (2011).

The only witness at the August 13, 2012 deprivation hearing was the child's case manager, who testified that R. S. T. was taken into custody because the mother's seven other children were previously adjudicated deprived, and because there was concern on the part of DFACS with regard to her "having the prior children in care, mental health issues, not having adequate housing, and not cooperating with the case plan that was set in place for those seven children." But the caseworker also testified

2

inconsistently both that the mother had completed mental health treatment and that her treatment was "ongoing."

On cross-examination, the caseworker testified that she had inspected the mother's residence, that the home had adequate accommodations and food, and that there were no safety concerns. Asked "what's wrong with the home," the caseworker responded that it was "the Department's policy" that a home evaluation be completed before a child is allowed to return home. Her only concern was "in reference to the other children;" she agreed that the mother had an adequate home for R. S. T. and that the father and paternal grandmother lived with her and were "willing [to] assist the mother in any way, shape or form," although the mother was "working on getting her own place." She acknowledged that DFACS took the child from the hospital the day after birth, and that the mother has never had an opportunity to care for the child. She also acknowledged that DFACS received no reports from the hospital that the mother was unable to care for the child or acting inappropriately. Finally, the caseworker acknowledged that the mother was cooperating with DFACS and attending the required meetings, and that she had "no evidence" that the mother was unable to supervise or control R. S. T.

It appears from the transcript that DFACS offered in evidence three exhibits, including a document identified as "P1" and described as "a certified copy of a sibling . . . deprivation order by the Court, on April 19th, 2012." Counsel for the mother objected, and the trial court deferred a ruling. At the end of the hearing, the trial court admitted the exhibit over the mother's objection, and found "clear and convincing evidence that the child is deprived" and placed custody with DFACS. In a colloquy after the ruling, counsel for the mother inquired:

Q. Even though the case manager testified to the contrary, Judge?
A. Yes.
Q. Okay.
A. Taking into account the prior order.
Q. So on the record, Judge, I'm assuming that based on the prior order you have sustained the petition that's before the Court?
A. Yes.
Q. And that alone?
A. Yes.

In its order finding deprivation in this case, the trial court recited that the order of April 19, 2012 was submitted as Exhibit 1 during the hearing, that it accepted the order into evidence, and that it took judicial notice of the order over objection. But no exhibits are attached to the transcript. In May, appellant requested, and the trial court ordered, supplementation of the record. But no supplementation was made until this court directed it in August. The supplemental record forwarded to this court

4

consists of photocopies of what appear to be irrelevant exhibits in another deprivation proceeding,[2] and a continuation order for all eight children, entered on August 13, 2013. But it includes no copy of the April 19, 2012 order requested by appellant and by this court, and upon which the trial court expressly relied in making its decision.

The facts of this case are remarkably similar to our recent decision in *In the Interest of S. D.*, 316 Ga. App. 86 (728 SE2d 749) (2012). There, we reversed a finding of deprivation because DFACS presented no evidence of present deprivation of the child. The only evidence relied upon by the trial court was a psychological evaluation and citizen review panel report in the *mother's* DFACS case, made before the child's birth. While the trial court took judicial notice of those documents, they were not tendered into evidence. We found that, even assuming judicial notice was proper, in the absence of the documents and any testimony as to their contents, the juvenile court could not consider them in determining deprivation.

Here, the supplemental record does not include the crucial document tendered in evidence and admitted by the trial court. The trial court expressly and exclusively based its ruling on the prior deprivation order. And even if that order had been

---

[2]The supplemental record transmitted to this court contains a "case plan report" and seven "diligent search reports" with "P-1" through "P-8" marked in handwritten ink in the upper right corners.

properly admitted, it showed only a finding of deprivation in the past, as to other children. As the mother's counsel observed, if this is all that is required, "all the Department has to do is bring in every past order of . . . every child in the past that's ever been in the family used as current evidence or current deprivation as to any and all future children . . . . " "The [S]tate must present evidence of present deprivation, not past or potential future deprivation. [Cit.]" *In the Interest of J. J.*, 317 Ga. App. 462, 463 (1) (731 SE2d 766) (2012). And here, it failed to do so. *S. D.*, supra, 316 Ga. App. at 89 (2).

We express absolutely no opinion as to whether deprivation could be shown with respect to this child upon adequate proof made part of the record. Nor do we express an opinion as to the fitness or conduct of the mother. We hold merely that DFACS must meet the requirements of the law with respect to proof, and that the evidence relied upon by the trial court must be part of the record on appeal.

> While this court is mindful of the fact that the DF[A]CS caseworkers are charged with the safety and security of the most vulnerable among us, and in this laudable yet unenviable position are required to make at times alacritous decisions, as this court has noted previously, the right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon

only under the most compelling circumstances. That standard has not been met in this circumstance.

(Citations and punctuation omitted.) *In the Interest of K. S.*, 271 Ga. App. 891, 894 (611 SE2d 150) (2005).

In the absence of evidentiary support for the juvenile court's findings of fact, we must reverse the judgment below and remand for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Doyle, P. J. and McFadden, J., concur.*