**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 24, 2026

# In the Court of Appeals of Georgia

A26A0747. IN THE INTEREST OF E. G., a child.

BROWN, Chief Judge.

In this dependency proceeding, the juvenile court issued a final order after a hearing to review a protective order, finding the issues that led to E. G.'s dependency had been resolved and returning legal and physical custody of the child to the mother. On appeal from that order, E. G., through his court-appointed attorney, argues in interrelated enumerations of error that the juvenile court erred by not setting an attorneys-only hearing to obtain E. G.'s autism assessment prior to closing the case and by not giving Appellant's counsel an order to obtain E. G.'s autism assessment. We affirm.

"In appeals from orders in a dependency case, we construe the evidence in the light most favorable to the juvenile court's findings." *In the Interest of B. R.*, 368 Ga. App. 353, 354 (890 SE2d 129) (2023). So viewed, the record shows that an emergency request for an ex-parte order for protective custody for three-year-old E. G. was filed on July 3, 2024. That same day, the juvenile court issued a Dependency Removal Order, ordering that E. G. be placed in the custody of the Department of Family and Children's Services ("DFCS") because E. G. had an unexplained broken leg and the mother had a prior arrest for cruelty to children and ongoing housing issues. The juvenile court ordered the appointment of an attorney for E. G. as well as a Court Appointed Special Advocate ("CASA") as a guardian ad litem for E.G. pursuant to OCGA §§ 15-11-104 and 15-11-106.

According to the dependency petition, E. G. presented to the hospital with a broken leg while in the care and custody of his mother, which she was unable to explain. The petition also alleged that there were numerous reports of E. G. wandering outside of the home naked without supervision unbeknownst to the mother, and the mother failing to take necessary precautions to prevent E. G. from leaving the home and properly supervise him despite knowing that the child had a history of eloping

from the home. In the two months prior to E. G.'s broken leg, his mother was charged with two counts of reckless conduct and cruelty to children in the second degree and had been arrested for violating her bond conditions. The petition also reflects that E. G.'s mother was in the process of being evicted due to nonpayment and numerous complaints of E. G. walking on the street in the middle of the night without supervision. The mother reportedly was a victim of domestic violence and had not furnished her home due to her fear of having to flee. E. G.'s father was incarcerated.

Following an adjudicatory hearing in August 2024, the juvenile court determined that E. G. was dependent and ordered that temporary custody would remain with DFCS as a suitable placement with a relative was not available. The juvenile court's order also concluded that the permanency plan for the child was reunification and established a reunification case plan for the mother.[1]

At reunification review hearings held in December 2024 and April and June 2025, the juvenile court considered evidence that the mother was compliant in achieving her reunification case plan goals. She completed all required assessments and a parenting class, obtained employment, secured appropriate housing, and

---

[1] The juvenile court conducted a separate hearing as to the father, after which it likewise found E. G. was dependent as to the father.

participated in parenting support services. Evidence was also presented that E. G. had been assessed for services by Babies Can't Wait and was scheduled to receive speech therapy and an autism assessment. Based on this evidence, the juvenile court ordered that temporary custody and control of E. G. be returned to the mother under the terms and conditions of a protective order wherein the mother shall comply with certain requirements, including "ensur[ing] that the child is provided with adequate medical services for his health and well-being and for his physical needs."

At a final review hearing conducted in July 2025, the DFCS case manager testified that the mother had completed the requirements of the protective order's reunification case plan. She also testified that an autism assessment was conducted on E. G. two days prior. The case manager recommended that the protective order be removed and that the autism assessment report be provided to the mother so that she could follow any recommendations it provided. The case manager testified that it would take approximately three weeks for the results of the autism assessment to be available. The guardian ad litem was in agreement with the dismissal or closing the protective order.

When asked if any party objected to the reunification and the closing of the case, E. G.'s attorney objected, requesting that the juvenile court hold an attorneys-only conference prior to the closing of the case so that he could receive a copy of the results of the autism assessment and make sure the mother had the opportunity to address E. G.'s special needs. The juvenile court denied this request, finding that "there [was] no ongoing need for continued court oversight. The [c]ourt finds that the mother has been completely compliant with the Protective Order and does not need micro-managing." The juvenile court also denied E. G.'s attorney's request to provide an order for him to receive the autism assessment, likewise finding that to be an overreach. The juvenile court indicated in its order that E. G.'s attorney "may subpoena the results of the [autism] assessment if he chooses."

On August 26, 2026, the juvenile court entered a "Protective Order Review and Closure Order," which closed the protective order, ordered that legal custody and control of E. G. remain with the mother, and relieved DFCS of further responsibility. E. G., through his attorney, now appeals the trial court's closure of the case without first allowing his attorney to obtain a copy of the autism assessment.

1. Before turning to E. G.'s enumerations of error, we first address the State's argument that E. G. and his attorney lack standing to appeal.[2] E. G.'s attorney argues that the trial court's refusal to provide him with E. G.'s autism assessment prior to closing the case prevented him from "zealously advocating" for E. G. so that he could ensure that "help is offered to the [m]other to get the special education services that E. G. deserves." However, the legal "protector of a child's best interests [in a dependency proceeding] is his guardian ad litem." *In the Interest of W. L. H.*, 292 Ga. 521, 524 (739 SE2d 322) (2013). Accordingly, "when a court appoints a guardian ad litem to represent a minor [in a dependency action], the minor is in effect made a party to the action and has standing through the guardian ad litem to appeal." Id. (punctuation and emphasis omitted). As noted by our Supreme Court,

> [a] child's attorney, unlike a guardian ad litem, must attempt to maintain a normal client-lawyer relationship with the child, and the attorney must defer to the child's wishes regarding the ultimate objectives of representation. A guardian ad litem, on the other hand, is bound to protect the best interests of the child, even in contravention of the child's personal desires.

---

[2] We also may address the issue of standing sua sponte as it is "a threshold jurisdictional issue." *Clark v. Skandalakis*, 377 Ga. App. 18, 19(1) (921 SE2d 458) (2025).

Id. at 524 n.2 (citations omitted). Accordingly, a minor child, "acting through his attorney and against the wishes of his guardian ad litem, lack[s] standing to appeal the trial court's finding" of dependency. Id. at 525.[3]

Here, E. G. was appointed a guardian ad litem, who agreed with closing the case and returning custody to the mother prior to the results of the autism assessment being returned. The guardian ad litem has not filed any brief in this appeal. The child's parents also do not contest this result. Indeed "[a]ll of the adults who are legally entrusted with the child's best interests do not believe an appeal is necessary." *In the Interest of W. L. H.*, 292 Ga. at 524. Accordingly, we conclude that E. G., acting through his attorney, lacks standing to appeal the trial court's finding of dependency and the closure of the case prior to the results of the pending autism assessment.

2. Even if we assume that E. G. and his attorney have standing to appeal the juvenile court's ruling, E. G.'s attorney has not directed us to any relevant legal

---

[3] This Court has held that a child has standing to appeal a juvenile court's order in a dependency case under two scenarios. The first scenario is when the child is represented solely by an attorney with no guardian ad litem. See e.g., *In the Interest of J. C. W.*, 318 Ga. App. 772 (734 SE2d 781) (2012). The second scenario is when the child's non-attorney guardian ad litem acquiesces to the appeal filed by the child's attorney. See e.g., *In the Interest of R. L.*, 321 Ga. App. 837 (743 SE2d 502) (2013). Neither scenario applies in the instant case.

authority to suggest that it was reversible error for the juvenile court to decline to order that E. G.'s attorney receive a copy of the autism assessment.[4]

*Judgment affirmed. Rickman, P. J., and Mercier, J., concur.*

---

[4] The only legal citation provided by E. G.'s attorney is OCGA § 15-11-210(c)(3), which pertinently provides that during a disposition hearing in a dependency proceeding, the court "shall receive in evidence ... [a]ny psychological, medical, developmental, or educational study or evaluation of the child adjudicated as a dependent child" before determining the appropriate disposition. Because E. G.'s attorney does not contest either the finding of dependency or the determination by the juvenile court that E. G. was no longer dependent, the statute does not provide any support to his argument.